STATE

v.

Lawrence J. MOOSEY.

No. 84–481–C.A.

Supreme Court of Rhode Island.

Feb. 6, 1986.

Arlene Violet, Atty. Gen., Constance Messore, Timothy Conlon, Sp. Asst. Attys. Gen., for plaintiff.

John B. Reilly, Reilly & Flaherty, Warwick, for defendant.

## OPINION

SHEA, Justice.

The defendant, Lawrence Moosey, has appealed from his conviction in Superior Court on two counts of assault with a dangerous weapon and one count of possession of a weapon without a license. Following the denial of the defendant's motions for judgment of acquittal and a motion for new trial, the defendant received a ten-year prison sentence on one assault count, a suspended ten-year term with ten years of probation on the second assault count, and a five-year prison sentence on the possession charge. We affirm.

The evidence presented at trial established that on the afternoon of December 28, 1981, Detectives Carroll and Bathgate, undercover officers with the Providence police department, approached defendant's vehicle in an unmarked police van. At the time defendant, along with another person, was seated in the front seat of his vehicle, which was stopped in the middle of a public street. The defendant and his passenger were talking to a pedestrian as the police officers approached. From their unmarked van directly behind defendant's vehicle, the officers directed defendant to move his car. The defendant shouted in reply, "I'll put one in your head," and sped off with the officers in pursuit.

The defendant slowed his vehicle and, as the police van approached, he reached under his seat with his right hand and then came up through the sunroof pointing an object at the pursuing officers. The officers heard a bang and saw a flash come from the object in defendant's hand. The windshield of the van was immediately shattered by a projectile. The defendant attempted to flee but was apprehended shortly thereafter with the assistance of other officers.

The defendant was arraigned on the charges on February 4, 1982. After his arraignment in the Superior Court, defendant was tried and convicted and received a sentence of five years in the United States District Court for the District of Rhode Island on felony charges unrelated to this case. He was then incarcerated at the Federal Correctional Institution at Ray Brook, New York.

Prior to July 27, 1983, the State of Rhode Island lodged a detainer based upon the charges involved in this case with the Ray Brook authorities under the provisions of the Interstate Agreement on Detainers (IAD). General Laws 1956 (1981 Reenactment) chapter 13 of title 13.

On July 27, 1983, the New York prison authorities executed the certificates of Inmate Status, Offer to Deliver Temporary Custody, and Inmate Notice of Place of Imprisonment and Request for Disposition of Indictments, pursuant to the IAD. The defendant was transferred to Rhode Island on September 7, 1983, in accordance with the provisions in the IAD. This case was reached for trial on January 9, 1984. The defendant filed motions to dismiss the case under both § 13–13–2 articles 3 and 4 of the IAD which, after argument, were denied. The trial, conviction, and sentencing followed.

## I

The defendant asserts that the trial justice erred in denying the motion to dismiss relying on the failure to comply with the IAD's time requirements. Section 13–13–2 article 3 (a) of the IAD provides that a defendant invoking its provisions must be brought to trial within 180 days after "he [the prisoner] *shall have caused to be delivered to the prosecuting officer* and the appropriate court * * * written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint * * *." (Emphasis added.) The issue here concerns when the 180–day period begins to run.

■ The defendant argues that the trial justice should have ruled that his demand for a "fast and speedy trial," filed before Rhode Island lodged a detainer against him, started the running of the 180–day period. However, this court has held that a defendant's demand for a "fast and speedy trial" will have no effect upon the procedural requirements of the IAD before a detainer is lodged. We have stated that

" '[i]t is not until the jurisdiction having the untried criminal charge lodges a *detainer based on an indictment, information or complaint* with the state of the defendant's imprisonment that the provisions of the IAD become operative.' " *State v. Newman,* 117 R.I. 354, 358, 367 A.2d 200, 202 (1976).

■ We hold that in this case the 180–day period began to run when the Attorney General's office received *both* the prisoner's request for disposition *and* the "Certificate of Inmate Status" from the transferring prison. A majority of states have interpreted the IAD's 180–day provision "to commence on the date that the demanding state receives the prisoner's request for final disposition. * * * '[T]he plain language of Article III * * * leads to the conclusion that the date of *receipt* of notice by the prosecuting authorities triggers the statutory period.' " *State v. Braswell,* 194 Conn. 297, 304, 481 A.2d 413, 417 (1984). Because in this case Rhode Island brought defendant to trial 166 days after receiving his request for disposition and the "Certificate of Inmate Status," the trial justice was correct in determining that the 180–day requirement was met.

Alternatively, defendant argues that even if the 180–day requirement of § 13–13–2 article 3 of the IAD was met, trial of defendant was not commenced within 120 days of the arrival of the prisoner in the receiving state as is mandated by § 13–13–2 article 4 of the IAD which states:

"(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty (120) days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisidiction of the matter may grant any necessary or reasonable continuance."

■ The purpose of the IAD is to assure incarcerated defendants of speedy trials and to protect them from delays in trial caused by prosecuting authorities. This

case does not present a situation in which a defendant is "banging on the court house doors" demanding that he be tried immediately. Nor do we have a situation in which the state was responsible for any of the delay in prosecution. In fact, it appears from the record that the state was prepared and willing to go forward with this case well within the 120–day period. Here, the actions of defendant and his counsel resulted in delay of the trial. Therefore defendant was responsible for the delay.

The record makes clear that defendant was in Rhode Island as of September 8, 1983 at which time he appeared before the Superior Court. The matter was then continued until September 13 for a pretrial conference, and trial was set for the week of October 17, well within the 120–day time period. However, defendant's counsel was not present for the pretrial conference, and in open court the trial justice, "for good cause shown," then set a later date for the pretrial conference.

Furthermore, defendant retained new counsel prior to trial, who did not enter his appearance until December 22, 1983. Defense counsel then requested, and was granted, a continuance well past the 120–day period. This change of counsel and request for a continuance caused added delay in the proceedings.

As a result of these delays, brought about by the actions of defendant himself, he was not brought to trial until January 9, 1984 which is beyond the 120–day period. The delays which occurred in this case were caused by defendant and were allowed by the trial court in order to protect his rights. Such delays are not the kind that article 4(c) of the IAD was designed to protect against and therefore these delays did not warrant a dismissal of the action. Had defendant not caused any delay, he would have been tried well within the time period established by the IAD. There is ample evidence from the record to support

the trial justice's findings that the dictates of this section of the IAD were met.

## II

The defendant next claims that the trial justice erred in denying his motion to dismiss for unnecessary delay pursuant to Rule 48(b) of the Superior Court Rules of Criminal Procedure.[1] Such a motion is addressed to the sound discretion of the trial justice. On appeal we shall disturb his decision only if there is a clear showing of abuse of that discretion. *State v. Macaskill*, — R.I. —, 475 A.2d 1024 (1984); *State v. Austin*, — R.I. —, 462 A.2d 359 (1983). Under Rule 48(b) the defendant has the burden of showing that he was not responsible for any of the delay. *State v. Boss*, — R.I. —, 490 A.2d 34 (1985); *State v. Long*, — R.I. —, 488 A.2d 427 (1985).

■ As our discussion of the issues raised under the Interstate Agreement on Detainers indicates, defendant was largely responsible for the delays that occurred. Consequently the trial justice did not abuse her discretion in denying the motion to dismiss under Rule 48(b).

## III

■ At the outset of the case the trial justice advised the jury that defendant was "in custody." The defendant asserts that this constituted reversible error. Recently in *State v. Fenner*, — R.I. —, 503 A.2d 518 (R.I., 1986) this court considered a similar situation. In *Fenner* we determined that

"the comments made by the trial justice were not so inherently inflammatory or prejudicial as to render the jurors incapable of following the instruction that this fact was indeed to be regarded as neutral.

\*    \*    \*    \*    \*    \*

1. Rule 48(b) of the Superior Court Rules of Criminal Procedure has been repealed by order dated November 21, 1984, as amended and effective for cases arising on or after November 21, 1984.

"In sum, taking into account all of the circumstances of this case and the lack of initial objection [to the instruction], we are of the opinion that the trial justice did not commit reversible error in the admonitions given to the jury and in refusing thereafter to pass the case." *Id.* 503 A.2d at 522–523.

In *Fenner,* we established guidelines for the trial court in order to clarify the situations in which such an instruction to the jury should be given. We stated that

"it should be the obligation of a trial justice to inform counsel in advance if he or she intends to advise prospective jurors or jurors who have been selected to serve on a particular case that the defendant is in custody for the purpose of neutralizing any inference that might otherwise be formed. In the event that counsel objects to such an admonition, he or she has an obligation to inform the trial justice forthwith before the admonitions have been given. In such a situation, the trial justice should forego making such a statement to the jurors * .* * ". *Id.* 503 A.2d at 522.

In this case, although the trial justice gave the instruction over timely objection, *Fenner* had not yet been decided, and therefore, we will not apply the *Fenner* standard to this case. Looking at all of the facts and circumstances of this case, we are not pursuaded that this instruction rose to the level of reversible error.

We seriously question the necessity for and the advisability of informing a jury in every case that a defendant is in custody. Our time-honored practice has been not to mention incarceration to the jury unless it is done as a curative instruction when defendant has been seen in custody by jurors. To volunteer this information routinely to the jury, without a particular need, runs the risk, in our opinion, of impugning the presumption of innocence unnecessarily.

## IV

The defendant claims that the trial justice erred in limiting cross-examination of state witnesses regarding alleged prior inconsistent statements and a paraffin test. The disallowed questions concerned both the direction defendant turned when coming up through the sunroof in order to face the pursuing officers' van and the manner in which defendant was apprehended and subsequently arrested.

We have consistently held that the scope of cross-examination is a matter left to the sound discretion of the trial justice. *State v. Austin,* —— R.I. ——, 462 A.2d 359 (1983); *State v. Wallace,* —— R.I. ——, 428 A.2d 1070 (1981). We have also held that the determination of whether an allegedly inconsistent statement is material is within the sound discretion of the trial justice, *State v. Cianci,* —— R.I. ——, 430 A.2d 756 (1981), as are questions of relevancy and materiality. *State v. Champa,* —— R.I. ——, 494 A.2d 102 (1985); *State v. Barnville,* —— R.I. ——, 445 A.2d 298 (1982); *State v. Aptt,* —— R.I. ——, 441 A.2d 824 (1982). Such determinations made by a trial justice will be disturbed on appeal only when an abuse of discretion is shown. *State v. Austin,* —— R.I. ——, 462 A.2d 359 (1983); *State v. Ashness,* —— R.I. ——, 461 A.2d 659 (1983); *State v. Ucero,* —— R.I. ——, 450 A.2d 809 (1982).

■ The trial justice found that the officers' prior statements as recorded in their police reports and given under oath during pretrial proceedings were not inconsistent, and she refused to allow defendant to pursue cross-examination on these points. Although defendant argues on appeal that there were inconsistent statements about both the placement of the van at the time the shot was fired and the direction in which defendant turned as he stood up through the sunroof and that these statements were material, he presented nothing to us that would warrant our holding that the trial justice was clearly wrong or that she abused her discretion.

■ The trial justice also ruled that questions relating to the performance of a paraffin test were not admissible and disal-

lowed any related offer of proof. The defendant, while asserting the admissibility of this information on appeal, has failed to inform this court in his brief or at oral argument of what his offer of proof would have contained had it been allowed. There is nothing in the record from which we could conclude that a paraffin test, usually performed to determine if gun-powder residue is present on a person's hand, was or was not performed by the police. In the absence of any information one way or the other either in the trial transcript, in defendant's briefs, or during oral argument to this court, we have no basis on which to evaluate the trial justice's ruling. Therefore, it will stand.

### V

The defendant had caused to be served a subpoena duces tecum on the vehicle custodian of the Providence police department, requesting that the undercover van used in the case and any records of repair from December 28, 1981, to the time of trial be produced. After a hearing on the state's motion to quash the subpoena the trial justice quashed the subpoena as to the van. The state's witness had complied with the balance of the subpoena.

" 'It is generally within the discretion of the court to exclude even relevant evidence when its probative value is clearly offset by its remoteness, the danger of undue prejudice, undue consumption of time, or possible confusion of issues.' " *State v. Reardon*, 101 R.I. 18, 24, 219 A.2d 767, 771 (1966). A trial justice's ruling on such a question will be disturbed on appeal only upon a showing of abuse of that discretion. *State v. Ashness*, —— R.I. ——, 461 A.2d 659 (1983).

■ The defendant argues that the quashing of his subpoena inhibited further inquiry into a witness's examination of the van and subsequent findings relating to the van. However, photographic as well as other evidence was introduced at trial that enabled defendant to conduct a thorough cross-examination of this witness. In his brief, defendant did not explain how the production of the van itself before the jury would have enabled him to conduct a more thorough examination of the witness than he was able to do with the evidence that was introduced. Because of this failure to explain in what way he claims to have been prejudiced, we have no reason to conclude that the trial justice abused her discretion in granting the motion to quash the subpoena in regard to the van.

### VI

■ At the conclusion of the state's case and again at the end of all evidence, defendant moved for judgment of acquittal. The defendant argued that there was a lack of sufficient evidence to prove that he was actually armed with a pistol or gun or that he was in a position to complete the crimes charged. At the conclusion of all the evidence, defendant renewed his motion for a judgment of acquittal, and argued that the evidence was simply insufficient to determine that he had any ability to complete the assault as charged or to establish who, if anyone, he was attempting to assault.

In ruling on a motion for judgment of acquittal, the trial justice "must consider only that evidence which the prosecution claims is capable of generating proof beyond a reasonable doubt. Such evidence is to be viewed in the light most favorable to the state, and the trial justice must draw therefrom all reasonable inferences that are consistent with the guilt of the accused. Neither the weight of the evidence nor the credibility of the witnesses may be considered in passing upon such a motion." *State v. Lemon*, —— R.I. ——, ——, 497 A.2d 713, 718 (1985).

Officers Carroll and Bathgate testified that as they approached Moosey's car, he reached under his seat with his right hand. He then came up through the sunroof, turned toward the van, and pointed an object at the officers. The officers testified that they then heard a bang, which both

officers said sounded like a gunshot, and saw a flash emitted from the object in Moosey's hand. The windshield of the van immediately shattered. Officer Joseph Scichilone, assistant armorer for the Providence police department, testified as an expert in firearms and ballistics. On direct examination he stated that he had inspected the van at the scene and concluded that the hole in the windshield was caused by a bullet. He also testified that he removed a lead fragment from the rubber molding along the border of the windshield, which fragment, in his opinion, appeared to be a part of a bullet. This testimony supports the trial justice's determination that there was evidence that, if believed by the jury, was capable of proving guilt beyond a reasonable doubt. We find, therefore, that the trial justice did not err in denying defendant's motion for judgment of acquittal.

### VII

■ It is defendant's contention that the trial justice committed reversible error in her charge to the jury regarding carrying a pistol without a license. The defendant maintains that in her charge the trial justice used the word "gun," highlighting a word that was not otherwise defined for the jury. On close examination of the instruction in question, it is apparent to us that the trial justice was specific in her word usage. She began her charge by stating that "the law on Count 3, the third charge against the defendant, says that no person shall knowingly, without a license or permit, carry a *pistol or revolver.*" Her use of the words "pistol or revolver"[2] made the type of weapon clear to the jury as was necessary to support the crime charged.

"In reviewing an instruction given to the jury, we must look to the entire context in which the charge was rendered." *State v. Desmarais,* —— R.I. ——, ——, 479 A.2d 745, 747 (1984). We conclude from our reading

of the entire charge that the jury was not misled. The trial justice repeatedly stressed the elements of the offense and the requirement that the state prove each element beyond a reasonable doubt. Her occasional reference in the jury instruction to the word "gun," as opposed to "pistol," did not constitute reversible error.

■ We note the state's failure to respond in its brief and in oral argument to several issues raised by the defendant. Although full legal argument on each issue on appeal is not always required, some reference to those raised and a brief statement why a particular argument lacks merit is essential. Without any response from the state we must rely upon our own research to meet defendant's contentions. We have considered all issues raised by the defendant and have determined that they are without merit.

For these reasons the defendant's appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers in the case are remanded to the Superior Court.

---

**2.** General Laws 1956 (1981 Reenactment) § 11–47–2 states:

"Definition of terms.—When used in this chapter the following words and phrases shall be construed as follows:

'Pistol' shall include any pistol or revolver, and any shotgun, rifle or similar weapon with overall length less than twenty-six (26) inches, but shall not include any pistol or revolver designed for the use of blank cartridges only."