STATE

v.

Louis SHATNEY.

No. 89–358–C.A.

Supreme Court of Rhode Island.

April 10, 1990.

James E. O'Neil, Atty. Gen. and Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Paula Rosin, and Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

MURRAY, Justice.

This case is before the court on the appeal of the defendant, Louis Shatney (Shatney), from a conviction in Superior Court of one count of first-degree sexual assault, one count of first-degree child molestation, and three counts of second-degree child molestation. Shatney asserts that the trial justice erred in denying Shatney's motion to dismiss the indictment on the grounds that the state had violated the requirements of the Interstate Agreement on Detainers by failing to bring the defendant to trial within 180 days. Shatney further asserts that the evidence was legally insufficient to support a finding that the defendant had unlawful sexual contact with the oldest child. Accordingly we advert to a brief precis of the factual situation in order to discuss these issues in depth.

On November 4, 1987, Shatney was indicted on sixteen counts of offenses including first- and second-degree sexual assault and cruelty to a child. Counts 1 through 8 and 16 were dismissed by the state on May 3, 1988. The dismissed counts were subsequently transferred to the Family Court.

On September 6, 1988, a jury-waived trial began before the trial justice. Shatney's three stepchildren, hereafter known by the fictitious names of Mary, Lisa, and John, testified. Lisa was eleven years old at the time of trial. She testified that her mother (Mother) started dating Shatney when she was four years old and her family was living in Connecticut. Mother eventually married Shatney. When she was six years

old, her family moved to Johnston, Rhode Island. Lisa testified to the nature of various sexual acts in which Shatney engaged with her in Rhode Island. She testified that Shatney committed sexual acts with her brother and her sister and that Shatney took pictures of her and her siblings without any clothes on and made them pose in "nasty ways." She identified photographs at trial and testified that most of them were taken in Mother's room in Johnston, Rhode Island.

John, who was nine years old at the time of trial, testified that on different occasions while his family was in Rhode Island and Connecticut, Shatney touched his penis. On several other occasions both in Connecticut and in Rhode Island Shatney made John touch Shatney's penis. He further testified that both Mother and Shatney took pictures of him with his clothes off. John identified himself in one of the photographs.

Mary, who was thirteen years old at the time of trial, testified that Shatney touched her breasts and vagina and tried to have sex with her. She testified that this activity occurred in Rhode Island. Mary also identified several photographs of herself that were taken by Mother and Shatney while she was in Mother's room in Johnston, Rhode Island.

A sergeant from the Connecticut State Police testified that in late September 1985, after a hurricane, some people who were walking in a rural area found in a brook some sexually explicit photographs of children. These people turned the photographs over to the State Police. The Connecticut State Police identified the children as Mary, Lisa, and John. On November 1, 1985, Shatney was arrested in a motor home in Maine. At the time of his arrest a search revealed more photographs of the children and two Polaroid cameras that were identified by the sergeant. Mary later identified these cameras as those used by Shatney and Mother to take the pictures.

A detective from the Johnston police department, juvenile division, testified that the sergeant from the Connecticut State Police had advised him about the photographs. The sergeant further advised him that he had information that some of these photographs had been taken in Johnston, Rhode Island. On December 2, 1985, samples of wallpaper were taken from the family's apartment in Johnston, Rhode Island, in an attempt to identify where the photographs in question had been taken. The detective identified a number of the photographs as having been taken at the Rhode Island apartment.

Shatney's sister-in-law, hereafter known by the fictitious name of Visa, testified that she used to visit her sister, Mother, in Johnston, Rhode Island, two or three times a month. She identified photographs of the children and stated that they had been taken at her sister's apartment in Johnston, Rhode Island.

A child-protective investigator for the Department for Children and Their Families (DCF) testified for the defense. She stated that she met with the children in November 1985. At that time Lisa told her that Shatney had rubbed her vagina with his penis and committed several other sexual acts. The investigator further testified that Mary never specifically stated that the sexual acts committed upon her by Shatney occurred in Rhode Island.

Shatney testified that after meeting Mother in Connecticut, he was arrested for sexual assault on his previous girlfriend's daughter. While Shatney was serving three months in jail for this crime, Mary, Lisa, John, and Mother moved into his house in Connecticut. As part of his probation, Shatney was ordered to undergo counseling for sex offenders. While in counseling, he admitted that he was fondling the children. The Department of Children and Youth Services in Connecticut told Mother to remove the children from Shatney's home. The children and Mother eventually moved to Johnston, Rhode Island.

Shatney stated that he and Mother were married on February 2, 1985. Shortly thereafter, DCF removed the children from their Rhode Island home for a ninety-day period. Shatney further stated that the children were returned in May 1985, and a

restraining order was issued to prevent Shatney from seeing the children. He testified that except for a few occasions, he never visited or stayed in Johnston, Rhode Island, after the court order had been issued. Shatney further testified that at no time between July 1, 1984, and November 30, 1985, did he either touch or penetrate any of the three children while in Rhode Island. Shatney was charged with various counts of sexual assault in Connecticut. He pleaded guilty to two counts of sexual assault in the second degree on May 2, 1986.

On September 13, 1989, the trial justice found Shatney guilty of one count of first-degree sexual assault, one count of first-degree child molestation, and three counts of second-degree child molestation. He was found not guilty on counts 9 and 14. On November 22, 1988, the trial justice sentenced him as follows: on count 10 (first-degree child molestation) he was sentenced to life imprisonment, on count 12 (second-degree child molestation) he was sentenced to fifteen years, on count 15 (first-degree sexual assault) he was sentenced to life imprisonment, these three sentences to run concurrently. On counts 11 and 13 (two counts of second-degree child molestation) he was sentenced to fifteen years for each count, each to run consecutive to the sentences previously imposed. The trial justice further ordered that the sentences were to run consecutive to the Connecticut sentence. Shatney filed a notice of appeal on December 1, 1988.

Shatney asserts that the trial justice erred in denying Shatney's motion to dismiss the indictment on the ground that the state had violated the requirements of the Interstate Agreement on Detainers (IAD) by failing to bring Shatney to trial within 180 days.

The pretrial procedural history of this case is as follows. On February 19, 1988, after submitting the appropriate papers required by the IAD, Shatney was transferred to Rhode Island. On April 18, 1988, the state filed a motion for speedy trial, which was granted. On May 3, 1988, defense counsel filed a motion for a bill of

particulars, which was denied on May 17, 1988, because defense counsel had not submitted a memorandum. Defense counsel requested another date "to put something together" in order to file a new motion. On June 3, 1988, both the state and defendant requested a continuance on different grounds. The state requested a continuance of the case until August 1, 1988. The prosecutor stated that she was starting hearings on pretrial motions in a sixty-count-indictment case before another trial justice. She also informed the court that she was court-excused for two weeks for the purpose of teaching at the National District Attorneys' College and thereafter she had to resume hearings on the pretrial motions in the other case. The defendant objected to an August 1, 1988 continuance. The defendant requested a continuance until July 1, 1988, because of a pending June 28, 1988 hearing on defendant's new motion for a bill of particulars and his motion to dismiss count 15 of the indictment. The trial justice granted the continuance and set August 1, 1988, as a date certain for the start of trial.

Shatney filed a motion to dismiss the indictment on the ground that the state had violated the IAD. A hearing was held before the trial justice on August 10 and 11, 1988, and the motion was denied. The trial justice found the following:

"I don't see, from what I've reviewed and what I've heard that there have been delays that have been necessarily caused by the prosecuting authorities. A continuance was requested by both parties. And the one requested by the state was made in good faith. It was acted upon after due consideration by a prior trial judge and he granted it. And I have to assume that the record would reflect that his reasons were sound, and that they were couched in the terms of the statute; that is to say, the continuance was granted because it was necessary and/or reasonable."

The trial justice further noted that because of the nature of this case, which involved the sexual abuse of children who have established a rapport with a particular prosecutor, it would be difficult to switch prose-

cutors. At this time the trial justice was ready to go forward with the trial as soon as the witnesses who were on call arrived. However, defense counsel then requested another continuance due to his court excusal for vacation purposes. Shatney did not object to a two-week continuance requested by his attorney when he was asked twice by the trial justice. The continuance was granted, and September 6, 1988, was the new date set for trial.

The IAD G.L.1956 (1981 Reenactment) § 13–13–2, article III, provides in pertinent part:

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided, that, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

We have held that "[t]he purpose of the IAD is to assure incarcerated defendants speedy trials and to protect them from delays in trial caused by prosecuting authorities." *State v. Lionberg*, 533 A.2d 1172, 1179 (R.I.1987). "The criteria to be considered in deciding whether or not a defendant has been denied his constitutional right to a speedy trial were set out in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). * * * The factors to be balanced are: 1) length of delay; 2) reason for delay; 3) assertion of the right; and 4) prejudice to the accused." *State v. Newman*, 117 R.I. 354, 359, 367 A.2d 200, 203 (1976). We have found that

the IAD was not designed to protect against delays caused by actions of a defendant. *State v. Moosey*, 504 A.2d 1001, 1004 (R.I.1986).

■ After our review of the record we find that the delay of Shatney's trial was caused by defendant. The delays include defendant's May 17, 1988 request for a continuance because of his submission of an inadequate pretrial motion for a bill of particulars and defendant's June 3, 1988 request for a continuance until July 1, 1988, because of a pending June 28, 1988 hearing on defendant's new motion for a bill of particulars. The defendant's motion was not actually heard until July 5, 1988. At the hearing, defendant was ordered to comply with a pending supplemental discovery request within two weeks. Defense counsel further delayed trial by requesting a two-week continuance because of his court excusal for vacation purposes in August 1988. When asked by the trial justice whether he approved of his attorney's request for a continuance, Shatney responded, "I really don't care, your Honor." The actions of defendant clearly establish that "[t]his case does not present a situation in which a defendant is 'banging on the court house doors' demanding that he be tried immediately." *Moosey*, 504 A.2d at 1003–04.

■ We further find that any delay attributed to the state was the result of scheduling conflicts that were due to prior delays caused by defendant. There is no evidence that the state's request for a continuance on June 3, 1988, delayed defendant's trial unnecessarily or unreasonably. Both parties requested a continuance. The trial justice found that the state's request was made in good faith. Moreover, in light of the circumstances of this case, which involved the sexual abuse of children who were familiar with a particular prosecutor, the substitution of this prosecutor in her absence would not be feasible.

Shatney argues that he was prejudiced by the delay of his trial. He asserts that he was prejudiced because his critical treatment in a Connecticut sex offender's pro-

gram had been interrupted. At the hearing on defendant's motion to dismiss the indictment, Shatney stated that he had voluntarily applied for the sex-offender program in which he was participating. He also stated that he had been in a prior court-ordered sex-offender program in Connecticut during 1981–82 because of a prior conviction of a sex crime. At Shatney's sentencing, the trial justice found the prior counseling for sex offenders in which Shatney had participated not effective. He further found that the only reason for Shatney's attendance in the program was the fact that he was on probation. As soon as the probation period was over, however, Shatney refused further involvement in the program. These actions evidence Shatney's unwillingness to want actually to change his deviant behavior and the lack of his potential to benefit from a program. Therefore we find that a short interruption in his participation in a program, which was previously ineffective, did not prejudice Shatney.

■ The defendant further argues that he was prejudiced because he was unable to receive conjugal visits with his wife as provided for every ninety days in Connecticut. Shatney was allowed these visits until the time he was transferred to Rhode Island. His last visit was on December 30, 1987. The next visits would have occurred in March, June, and September of 1988. In February 1988 Shatney was transferred to Rhode Island. The 180–day period established by the IAD required Shatney to miss the March and June 1988 visits. On August 11, 1988, the trial court and the state were prepared to begin Shatney's trial. Had the trial gone forward on this date, Shatney would have returned to Connecticut prior to the September 1988 scheduled visit with his wife. However, Shatney's attorney requested a continuance on that date so that he could take a two-week vacation. When questioned by the trial justice whether he agreed with his attorney's request for a continuance, Shatney stated, "I really don't care, your Honor." If these regular visits were so important to Shatney, he would have objected to another request for a continuance by his attorney.

We find no prejudice to Shatney in the delay of his trial. For these reasons the trial justice was correct in denying Shatney's motion to dismiss the indictment.

■ Shatney next argues that the evidence was legally insufficient to support a finding that Shatney had unlawful sexual contact with Mary in Rhode Island as charged in count 11 of the indictment. Count 11 of the indictment charged that between June 1, 1985, and November 30, 1985, defendant did engage in sexual contact in Rhode Island with Mary in violation of G.L.1956 (1981 Reenactment) § 11–37–8.3, as amended by P.L.1984, ch. 59, § 2.

Section 11–37–8.3 provided: "A person is guilty of a second degree child molestation sexual assault if he or she engages in sexual contact with another person thirteen (13) years of age or under." We have stated that "[i]t is sufficient to prove jurisdiction if the evidence, as viewed by the trial justice, indicates that the crime occurred within the territorial jurisdiction of the court." *State v. Halstead*, 414 A.2d 1138, 1144 (R.I.1980). Further, "the findings of fact of a trial justice sitting without a jury are accorded great deference and will not be disturbed unless it is demonstrated that he or she misconceived or overlooked material evidence or was otherwise clearly wrong." *Oster v. Tellier*, 544 A.2d 128, 131 (R.I.1988).

The trial justice made the following findings concerning Mary:

"As to [Mary], I find that her testimony also was unvarnished, and I say that for this reason. For example, she said that there had been digital penetration, that there had been lingual penetration. She said that most clearly happened in Connecticut, and she could not really recall whether it happened in Rhode Island. If this child were bent on lying, if this child were bent on fabricating, bent on revenge or vindictiveness, all she had to do was say, 'You bet it happened in Rhode Island, too.' She didn't do that. But, she did say that there was none of this occurrence of penetration in Rhode

Island, and that reflects the allegations of Count 9 and Count 14. Count 9 was first degree child molestation, and Count 14 was penetration by force and coercion.

"Her candid responses to me, notwithstanding what [Lisa] may have said, constrain me to find the defendant not guilty of Counts 9 and 14. But, as to Count 11, as to [Mary], second degree molestation, I have no compunction, no problem, no doubt, that the defendant should be convicted of Count 11."

Mary testified on direct and cross-examination that Shatney had had sexual contact with her in Rhode Island. Specifically, she stated that while in Rhode Island, Shatney touched her private parts and put his penis between her legs.

This testimony was corroborated by Lisa's testimony. Lisa testified that while in Rhode Island, Shatney did to Mary what he did to her: "[H]e played with [Mary] and everything." Lisa further testified that she saw Shatney insert his penis into Mary's vagina in Rhode Island. The trial justice found that "[Lisa's] testimony at trial was clear, direct, unwaivering, and unvarnished. I am satisfied from her demeanor and her responses, and from her testimony that the child's testimony should be well credited."

The testimony of these victims is buttressed by the sexually explicit photographs that were introduced at trial. Visa identified photographs of Mary in sexually explicit positions (trial exhibit Nos. 4, 5, 6, 7, and 8) and stated that they were taken at the Johnston, Rhode Island, apartment. Trial exhibit No. 8 was identified by Visa as a photograph of both Mary and Shatney. This photograph depicts a naked Mary sitting on Shatney's lap with Shatney's erect penis between her legs and his hand on her chest.

In regard to Shatney's testimony that rebutted the above-described evidence, the trial justice found the following:

"I find that Louis Shatney's testimony was so devoid of candor, so devoid of truth, that it is rejected summarily out of hand. He says he never came back to Rhode Island after he was told he couldn't. Coincidentally, it happens to be the timing of the indictment which expresses allegations of sexual offenses in the State of Rhode Island. This testimony is so devoid of truth by no stretch of the most elastic imagination, can any fact-finder find truth in his testimony in that regard. I reject it totally."

After our independent examination of the record, within which are exhibit Nos. 4, 5, 6, and 7, and after particular attention is directed to exhibit No. 8, which is so explicit, we find that there was sufficient evidence to prove beyond a reasonable doubt that Shatney had sexual contact with Mary while in Rhode Island. Hence it is our conclusion that the trial justice was correct in finding Shatney guilty of second-degree child-molestation sexual assault upon Mary beyond a reasonable doubt.

Our review of the issues raised by the defendant on appeal and our analysis thereof lead us to conclude that in the instant case each issue raised by the defendant is without merit. The defendant's appeal is denied and dismissed, and the judgment of the Superior Court is affirmed.