**Supreme Court**

No. 2009-340-C.A.
(P1/05-3178A)
(P2/05-1869A)

State                              :

    v.                            :

Derrick R. Oliver.                :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | |
|---|---|
| State | : |
| v. | : |
| Derrick R. Oliver. | : |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  The defendant, Derrick R. Oliver, appeals after being convicted of five criminal counts.  On appeal, the defendant raises two issues.  First, he argues that the trial court erred when it did not dismiss the charges against him after the state allegedly failed to comply with the Interstate Agreement on Detainers Act (the IADA or the act), G.L. 1956 chapter 13 of title 13.  Specifically, the defendant, who was a prisoner in Massachusetts, contends that he should have been brought to trial in Rhode Island within 180 days after receipt of his request for a final disposition of the charges against him.  Second, the defendant argues that his convictions for both larceny and assault with a dangerous weapon violated the Double Jeopardy Clauses of the United States and Rhode Island Constitutions.  For the reasons set forth in this opinion, we affirm the judgments of conviction.

- 1 -

# I

## Facts and Travel

This appeal relates to two criminal cases that were eventually consolidated for trial. On June 23, 2005, the state filed a criminal information in the Superior Court for Providence County charging defendant with (1) domestic assault with a dangerous weapon (a motor vehicle), (2) assault with a dangerous weapon (a motor vehicle), and (3) violation of a protective order issued by the Family Court (P2/05-1869A). Those charges arose from an incident on September 21, 2004; it was alleged that defendant had purposefully followed and rear-ended a car in which his ex-girlfriend and a friend of hers were the occupants.

On October 28, 2005, a Providence County grand jury indicted defendant for (1) first degree robbery, (2) assault with a dangerous weapon (a knife), and (3) violating a no-contact order (P1/05-3178A). Those charges related to an incident that occurred in a parking lot on April 25, 2005; it was alleged that defendant had stabbed the same ex-girlfriend with a knife and repeatedly hit her face against the ground as she was trying to enter her car after work. It was further alleged that defendant had then taken his ex-girlfriend's purse and cell phone and had driven off in her car.

On July 27, 2005, defendant was arrested in Fall River, Massachusetts; he was thereafter tried and convicted in Massachusetts on a separate assault charge.[1] In a letter dated January 13, 2006 (the detainer), the Rhode Island Office of the Attorney General notified the Bristol County House of Corrections (the Massachusetts institution in which defendant was imprisoned) that there were outstanding arrest warrants relating to the two above-referenced Rhode Island

---

[1] The defendant's ex-girlfriend, who was the alleged victim in the two Rhode Island cases at issue in the present appeal, was also the victim involved in the Massachusetts assault case.

criminal cases. The detainer went on to ask that defendant be advised of his "right to make a request for final disposition" of the Rhode Island charges pursuant to the IADA; that act provides that a defendant must be brought to trial within 180 days after "he or she shall have caused to be delivered to the prosecuting officer and the appropriate court * * * written notice of the place of his or her imprisonment and his or her request for a final disposition * * *." Section 13-13-2, art. III(a).

At some time after the January 13, 2006 detainer was sent, the state received defendant's request for disposition under the IADA. On May 5, 2006, defendant was arraigned in Rhode Island with respect to P2/05-1869A and P1/05-3178A. On April 26, 2007—almost a year after his arraignment—defendant filed motions to dismiss with respect to both cases; he contended that dismissal was required because the criminal charges against him had "not been disposed of within the time period mandated by" the IADA.

On May 15, 2007, the state objected to defendant's motions, and the Superior Court held a hearing on that same day. At the hearing, the motion justice denied defendant's motion to dismiss, reasoning that the continuances that had been obtained by defendant made it "unreasonable to expect that the case [would] be tried" within the IADA timeline.

On May 31, 2007, the Superior Court consolidated the two cases for trial. On November 6, 2007, defendant filed a motion requesting that the court reconsider its May 15 decision denying the motion to dismiss. In his motion for reconsideration, defendant reiterated his argument that, since trial had not commenced within the time frame mandated by the IADA, the case must be dismissed. The defendant also requested an evidentiary hearing with respect to the IADA issues.

On April 24, 2008, after extensive briefing and after hearing oral arguments by both parties, the motion justice issued a written decision denying defendant's motion to reconsider. Regarding defendant's request for an evidentiary hearing, the motion justice noted that, when litigating defendant's initial motion to dismiss, defense counsel had "opted to rely on the [c]ourt documents and docket sheets in determining the travel of the case." The motion justice stated that defense counsel had made "a tactical decision" that "[could not] be revisited"; accordingly, he denied defendant's request for an evidentiary hearing.

The motion justice then turned to the merits of defendant's motion to reconsider. The court noted that it was "difficult for [the court] to calculate when the one hundred eighty (180) day deadline would have expired because none of the three[2] case files contain[ed] a request from the Defendant seeking disposition of the pending charges." The motion justice recognized, however, that one of the case files included a document filed with the court on April 26, 2006. He noted that the document "seem[ed] to indicate that custody was offered to Rhode Island at the request of the Defendant" on April 17, 2006. The motion justice's decision stated that, "[i]f the [April 17 request was] accurate, the one hundred eighty (180) days began to run on April 17, 2006." The motion justice then stated that, regardless of the exact date on which the 180-day deadline began to run, it was clear that defendant was not brought to trial within the time frame provided for in the IADA.

The motion justice went on to find that the case had been "continued nineteen times before the Defendant moved to dismiss the charges for untimely prosecution." The motion justice further found that thirteen of those continuances were attributable to defendant and that

---

[2] In addition to the two criminal cases that defendant is challenging on appeal, the state had filed charges against defendant in a third case; the Superior Court eventually dismissed those charges.

- 4 -

four of those thirteen continuances were for the purpose of allowing defendant "to consider offers by the prosecution to dispose of the cases by way of a plea agreement." The motion justice denied defendant's motion to reconsider, ruling as follows:

> "The Defendant cannot be permitted to request numerous continuances and then move for dismissal when the trial does not occur within the proscribed time period. Permitting him to do so would undermine the judicial system, and would allow a defendant to avoid prosecution through his own delay."

On September 15, 2008, defendant filed another motion to dismiss, which was unrelated to his earlier IADA motions. This most recent motion contended that the charges against defendant for both first degree robbery and assault with a dangerous weapon in P1/05-3178A should be dismissed "on the grounds of double jeopardy." The defendant argued that the charge of assault with a dangerous weapon would "not require proof of a fact that is not already required to be proved as part of the robbery."

On March 11, 2009—the day before trial began—the justice of the Superior Court who would be presiding over the trial conducted a hearing on defendant's double jeopardy motion. After listening to arguments from both parties, the trial justice, noting that she would be sitting without a jury,[3] deferred her ruling on defendant's motion; she stated that she would "address [the motion] if it becomes pertinent as time goes on."

The defendant's three-day bench trial began on March 12, 2009. On March 16, defendant was convicted of domestic assault with a dangerous weapon and assault with a dangerous weapon in P2/05-1869A (involving charges which stemmed from the motor vehicle incident on September 21, 2004).[4] As for P1/05-3178A (involving charges which stemmed from

---

[3] The defendant waived his right to a jury trial at the March 11, 2009 hearing.

[4] The charge in P2/05-1869A relating to an alleged violation of a protective order was dismissed by the trial justice after the state tried (unsuccessfully) to amend that charge to reflect

the incident in the parking lot on April 25, 2005), defendant was convicted of assault with a dangerous weapon and violating a no-contact order.

With respect to the robbery charge in P1/05-3178A, the trial justice requested further briefing from the parties on the double jeopardy argument that had been raised in defendant's pretrial motion to dismiss.

On May 21, 2009, after the requested additional briefs were filed, the Superior Court convicted defendant of the lesser included offense of larceny. The trial court, in finding defendant guilty of larceny rather than robbery, stated:

> "Although the defendant committed the theft of the purse and car, grabbing the keys, within a short time frame after he completed the assault with a dangerous weapon on [his ex-girlfriend], it was a subsequent event. He did not attack her to steal her car or her purse. * * * [The assault] had nothing to do with a robbery. It had to do with rage against a particular woman. * * * [B]ased on the evidence presented, I cannot reasonably infer that the assault was committed so that he would have access to her purse and her car. * * * [T]he lesser included of larceny is the more appropriate finding."

On August 6, the court sentenced defendant to a total of twenty-nine years to serve.[5] The defendant filed a timely notice of appeal.

---

the fact that defendant had allegedly violated a District Court protective order—and not, as the information charged, a Family Court protective order.

[5]   In P2/05-1869A, defendant was sentenced as follows: (1) for domestic assault with a dangerous weapon, twenty years, with eight years to serve, twelve years suspended with probation; and (2) for assault with a dangerous weapon, ten years, with two years to serve, eight years suspended with probation (to be served concurrently with the assault sentence). In P1/05-3178A, defendant was sentenced as follows: (1) for larceny, ten years, with one year to serve, nine years suspended with probation; (2) for domestic assault with a dangerous weapon, twenty years to serve (to be served concurrently with the larceny sentence and consecutively to the sentences imposed in P2/05-1869A); and (3) for the violation of a no-contact order, one year to serve (to be served consecutively to all sentences).

## II

## Analysis

## A

## The IADA Contention

The defendant argues that, because the state did not bring him to trial within 180 days of its receipt of his request for disposition, the state thereby failed to comply with the IADA, and his case should have been dismissed. We disagree.

This Court reviews de novo a trial court's denial of a motion to dismiss based on the IADA deadlines. State v. Clifton, 777 A.2d 1272, 1279 (R.I. 2001). However, we accord deference to the factual findings which underlie such a decision. State v. Werner, 831 A.2d 183, 191 (R.I. 2003).

The IADA is an interstate compact[6] among participating states which is "designed to expedite the trial of criminal charges pending in one state (the receiving state) while the person is incarcerated in another state (the sending state)." Werner, 831 A.2d at 191. In Rhode Island, the IADA is codified within chapter 13 of title 13 of the General Laws. The section of the IADA that is pertinent to defendant's appeal provides as follows:

> "Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he or she shall be brought to trial within one hundred eighty (180) days after he or she shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written

---

[6] The IADA "rests its constitutional footing on the Compact Clause of the United States Constitution"; therefore, the act "is subject to construction under federal law." State v. Clifton, 777 A.2d 1272, 1279 (R.I. 2001).

notice of the place of his or her imprisonment and his or her request for a final disposition to be made of the indictment, information or complaint; provided, that, for good cause shown in open court, the prisoner or his or her counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." Section 13-13-2, art. III(a).

The IADA further provides that, if a defendant's trial does not begin within the above-referenced time frame, then the court must dismiss the charges against the defendant. Section 13-13-2, art. V(c). However, that statutory mandate concerning dismissal of charges has been the subject of significant judicial construction; as a result, dismissal does not automatically occur every time that the 180-day period has run without a trial having begun. Indeed, we have expressly stated that the IADA "was not designed to protect against delays caused by actions of a defendant." State v. Shatney, 572 A.2d 872, 875, 876 (R.I. 1990) (upholding a trial court's denial of a motion to dismiss pursuant to the deadlines set forth in the IADA where the delay was due to continuances requested by the defendant). Rather, "[t]he purpose of the [IADA] is to assure incarcerated defendants speedy trials and to protect them from delays in trial caused by prosecuting authorities." State v. Lionberg, 533 A.2d 1172, 1179 (R.I. 1987) (emphasis added).

Assuming that the 180-day timeline began to run on April 17, 2006,[7] the deadline for trial to begin would have been October 13, 2006. The defendant's trial did not begin until March 12,

---

[7] In this case, it is unclear when (or if) the 180-day clock actually began to tick. The timeline begins once the out-of-state prisoner's request for final disposition "has actually been delivered" to both the prosecuting officer and the court. Fex v. Michigan, 507 U.S. 43, 52 (1993). The motion justice found that "[r]ecords at the Department of the Attorney General indicate that the State received notice from defendant on April 17, 2006." As for notice to the court, the Superior Court files in P2/05-1869A and P1/05-3178A do not include defendant's request for a final disposition. The motion justice noted that the record contained a letter filed with the court on April 26, 2006 that "seem[ed] to indicate that custody was offered to Rhode Island at the request of the Defendant." That filing, however, does not technically satisfy the statute, which requires delivery of the request for disposition itself.

We note that the "inmate bears the burden of demonstrating compliance with the formal procedural requirements of Article III." United States v. Henson, 945 F.2d 430, 434 (1st Cir. 1991). Despite the lack of clear evidence as to when (or if) the court received defendant's

2009. Those facts, however, do not tell the entire story. According to the timelines submitted by the parties to the motion justice,[8] there were nine continuances granted by the court between April 17, 2006 and the deadline of October 13, 2006. The record that was before the motion justice reflects that six of those continuances were attributable to the actions of defendant: four included a request for a continuance that was made on behalf of defendant and two were due to the fact that defense counsel was court-excused. Applying to the facts of this case the principle that the IADA "was not designed to protect against delays caused by actions of a defendant," we hold that defendant should not be permitted to take advantage of the delays for which he was responsible. See Shatney, 572 A.2d at 875.

The remaining three continuances were requested by the state. The defendant, however, never objected to those continuances,[9] nor did he ever raise the IADA deadline during any of the nine hearings on the continuances.

Given defendant's failure to ever raise his IADA argument before the deadline expired (despite having had numerous opportunities to bring it to the court's attention), it is our opinion that he forfeited that argument. As the United States Court of Appeals for the First Circuit stated in United States v. Dowdell, 595 F.3d 50, 64 (1st Cir. 2010):

> "We do not look favorably on [IADA] arguments that are
> not raised until the trial judge is no longer in a position to avoid a

---

request for disposition, we shall follow the trial justice's lead and assume (without deciding) that the IADA clock began to run on April 17, 2006.

[8] The motion justice found that those timelines "serve[d] as an accurate summary of the continuances granted in this case."

[9] A transcript submitted to the motion justice indicates that defense counsel had "No objection" to the state's first request. As to the state's second request, defense counsel stated: "I don't mind a week continuance, your Honor." As for the state's third request for a continuance, defense counsel voiced no objection.

violation. Addressing a similar scenario arising on habeas review, the Supreme Court endorsed the lower court's observation that '[i]t would not have been difficult for the judge to advance the date of the trial or make a finding on the record of good cause, either of which would have satisfied [an IADA deadline]. Because the subject never came up, however, the trial judge overlooked the problem.' [Reed v. Farley, 512 U.S. 339, 351 (1994) (quoting Reed v. Clark, 984 F.2d 209, 213 (7th Cir. 1993))]. The Court concluded that '[w]hen a defendant obscures [an IADA deadline] * * * and avoids clear objection until the clock has run, cause for collateral review scarcely exists.' [Id. at 349.] The same is true on direct review. A defendant who does not timely raise his IAD rights in district court forfeits those rights on appeal."[10] (Emphasis added.)

In our judgment, a defendant should not be permitted to ask for and assent to continuance after continuance and then seek to suddenly ensnare the state and the court in a "gotcha" moment once an IADA deadline has passed. See id.; see also Puleio v. Vose, 830 F.2d 1197, 1203 (1st Cir. 1987) ("The law ministers to the vigilant not to those who sleep upon perceptible rights.").

The defendant also argues that the continuances did not affect the IADA deadline because the act provides for extensions only "for good cause shown in open court." The United States Supreme Court, however, has recognized that the "good cause" provision "is, by clear implication, the sole means by which the prosecution can obtain an extension of the time limits over the defendant's objection." New York v. Hill, 528 U.S. 110, 116 (2000) (emphasis added). In this case, defendant never objected to the continuances sought by the prosecution.

This case simply "does not present a situation in which a defendant is banging on the court house doors demanding that he be tried immediately." See State v. Moosey, 504 A.2d 1001, 1003–04 (R.I. 1986) (internal quotation marks omitted) (rejecting a defendant's argument

---

[10] The defendant attempts to distinguish the Dowdell case that is cited in the text by noting that the defendant in that case "never moved to dismiss in the trial court on IADA grounds." While that is true, the First Circuit's opinion does not rely on that point. Instead, the Dowdell opinion turns on the fact that the defendant "obscure[d] [an IADA deadline] * * * and avoid[ed] clear objection until the clock ha[d] run"—which is exactly what happened in the case that is now before us. See United States v. Dowdell, 595 F.3d 50, 64 (1st Cir. 2010).

- 10 -

based on the IADA deadline where "the actions of [the] defendant and his counsel resulted in delay of the trial"). Accordingly, it is our opinion that the trial court did not err when it denied defendant's motion to dismiss.

## B

## The Double Jeopardy Contention

The defendant was convicted of assault with a dangerous weapon and larceny in P1/05-3178A (relating to the April 2005 incident in a parking lot). On appeal, the defendant argues that conviction on those two charges violated his constitutional rights under the Double Jeopardy Clause.[11] Again, we disagree.

Our analysis of an alleged error based on double jeopardy principles "is a mixed question of law and fact of constitutional dimension; thus, our review is de novo." State v. Stone, 924 A.2d 773, 778 (R.I. 2007). However, within that review, "we still accord a hearing justice's findings of historical fact, and inferences drawn from those facts, great deference * * *." Rice v. State, 38 A.3d 9, 16 (R.I. 2012).

The Fifth Amendment to the United States Constitution "protects criminal defendants from being 'twice put in jeopardy' for the same offense." State v. Bolarinho, 850 A.2d 907, 909 (R.I. 2004); see also State v. Gordon, 30 A.3d 636, 639 (R.I. 2011) (recognizing that the "essence" of the Double Jeopardy Clause "prohibits multiple prosecutions for the same offense" (internal quotation marks omitted)). This Court applies the "same evidence" test to determine whether a defendant has indeed been twice put in jeopardy. State v. Scanlon, 982 A.2d 1268,

---

[11] The defendant challenges his convictions on the basis of the Double Jeopardy Clauses in both the United States and Rhode Island Constitutions. This Court has noted that the Fifth Amendment to the United States Constitution "is echoed in [a]rticle 1, section 7, of the Rhode Island Constitution." State v. Grayhurst, 852 A.2d 491, 501 (R.I. 2004); see also State v. Marsich, 10 A.3d 435, 442 (R.I. 2010).

1277 (R.I. 2009) (citing Blockburger v. United States, 284 U.S. 299 (1932)). That test provides that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." State v. Davis, 120 R.I. 82, 86, 384 A.2d 1061, 1064 (1978) (quoting Blockburger, 284 U.S. at 304); see also State v. Day, 925 A.2d 962, 977 (R.I. 2007).

The defendant's argument focuses on the fact that, in the indictment in P1/05-3178A, he was originally charged with (1) robbery and (2) assault with a dangerous weapon. He contends that the "charge of assault with a dangerous weapon was clearly a lesser-included offense[12] of robbery" and that, therefore, he could not have been convicted on both counts. It is true that, given the protections afforded by the Double Jeopardy Clause, a defendant cannot be punished for both a greater and lesser included offense based on the same act. E.g., State v. Tessier, 589 A.2d 1199, 1200 (R.I. 1991).

Assuming, for the sake of argument, that the charge of assault with a dangerous weapon was a lesser included offense of the robbery charge, defendant's argument overlooks a critical fact: he was not convicted of robbery. Instead, the trial court convicted defendant of larceny.[13] Assault with a dangerous weapon is clearly not a lesser included offense of larceny (a crime that

---

[12]    A lesser included offense is "[o]ne that does not require proof of any additional element beyond those required by the greater offense." State v. Briggs, 787 A.2d 479, 487 (R.I. 2001) (internal quotation marks omitted).

[13]    Larceny is a lesser included offense of robbery. State v. Rolon, 45 A.3d 518, 524 (R.I. 2012). In this nonjury trial, the trial justice was able to enter such a conviction—an "accusation of [a] greater crime carries with it the charge that he has committed all necessarily included lesser offenses." See State v. Walker, 667 A.2d 1242, 1249 (R.I. 1995); see also G.L. 1956 § 12-17-14; cf. State v. Tessier, 589 A.2d 1199, 1200 (R.I. 1991) ("Since the defendant is effectively put on notice of the possible conviction of a lesser offense supported by the evidence, such an individual may adequately prepare a defense." (internal quotation marks omitted)).

- 12 -

has nothing to do with a threat of injury).  Compare State v. Briggs, 787 A.2d 479, 487 (R.I. 2001) (defining larceny as a "wrongful taking without right and a carrying away of another's personal property with a felonious intent to steal" (internal quotation marks omitted)) with State v. Caba, 887 A.2d 370, 372–73 (R.I. 2005) (noting that assault with a dangerous weapon consists of "[1] any unlawful offer to do corporal injury to another[,] [2] under such circumstances as may create a reasonable apprehension of immediate injury unless the person so threatened takes action or inaction to avoid it, coupled with [3] a present ability to carry the offer into effect" (internal quotation marks omitted)).

It is our opinion that, in view of the facts of this case, the convictions for larceny and assault with a dangerous weapon do not violate the Double Jeopardy Clause.  The trial justice found that the assault and larceny convictions were based on distinct acts.  Specifically, she found that the defendant "did not attack [his ex-girlfriend] to steal her car or purse."  Rather, the trial justice recognized that the larceny "was a subsequent event" that was not related to the assault with a dangerous weapon—the latter being a crime which was motivated by the defendant's "rage" against his ex-girlfriend.  The Double Jeopardy Clause is concerned with successive punishment for "the same act or transaction."  Davis, 120 R.I. at 86, 384 A.2d at 1064 (emphasis added) (quoting Blockburger, 284 U.S. at 304).  The convictions in this case do not raise such concerns because the assault with a dangerous weapon was an event that was entirely distinct from the larceny.

## III

## Conclusion

For the reasons set forth in this opinion, we affirm the Superior Court's judgments of conviction.  The record in this case may be returned to that tribunal.


**TITLE OF CASE:**   State v. Derrick R. Oliver.

**CASE NO:**   No. 2009-340-C.A.
(P1/05-3178A)
(P2/05-1869A)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   June 26, 2013

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**   Associate Justice William P. Robinson

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Netti C. Vogel

**ATTORNEYS ON APPEAL:**

For State:  Christopher R. Bush
Department of Attorney General

For Defendant:  Janice M. Weisfeld
Office of the Public Defender