Joseph A. PELLAND et al.

v.

STATE of Rhode Island et al.

No. 2005–275–A.

Supreme Court of Rhode Island.

April 11, 2007.

Richard A. Sinapi, Esq., Cranston, for Plaintiff.

Genevieve Allaire–Johnson, Esq., for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

Does the Department of Corrections (DOC) have the right to limit out-of-state travel for probationers previously convicted of sex offenses more restrictively than for other offenders? Must probationers challenging such a restrictive travel policy in a lawsuit do so using their own names, or may they use pseudonyms?

Joseph A. Pelland,[1] the only plaintiff who complied with a hearing justice's order denying a motion to proceed pseudonymously and continued pressing the litigation in his own name, asks us to hold that the policy of the DOC all but denying out-of-state travel for convicted sex offenders, except in certain narrow circumstances, was illegally implemented. The other plaintiffs contend that the justice who denied their motions to proceed using pseudonyms abused his discretion. The State of Rhode Island (state or defendants) disagrees, and counters that the hearing justice properly exercised his discretion when he denied the motions to proceed pseudonymously and that the DOC practice was merely an interpretation of an existing rule and therefore not subject to the constraints that the Administrative Procedures Act (APA), G.L.1956 chapter 35 of title 42, imposes on rulemaking. For the reasons stated in this opinion, we reject both of plaintiffs' contentions.

## I

### Facts and Procedural History

Effective January 1, 1996, the DOC promulgated policy number 28.24, pursuant to the notice and comment procedures for rulemaking under the APA. That rule placed certain restrictions on the out-of-state travel of probationers and parolees,[2] requiring them to secure permission from

---

1. Pelland was represented in this suit by the American Civil Liberties Union.

2. Although the policy applies equally to parolees and probationers, we will, for the sake of simplicity, use the term probationers in this opinion to characterize all those affected by the policy.

the DOC before they ventured beyond Rhode Island's borders.

On November 28, 2000, after several years experience under that policy, the DOC, for a variety of internal administrative reasons and to bring the implementation of its policy in line with those in other states, issued a clarifying memorandum detailing how the policy was to be enforced. The thrust of the memorandum was that one class of probationers—sex offenders—essentially would be barred from interstate travel unless they received written permission that would be granted only under extremely narrow circumstances.

Vexed by what they considered to be an unreasonable ban on their right to travel, engage in therapy, recreational, family and cultural activities, or pursue normal, productive employment opportunities, the four plaintiffs commenced this litigation in September 2001. They filed suit[3] using pseudonyms and claimed myriad wrongs engendered by what they claimed was a new policy. They alleged that several of their enumerated rights under both the United States. and Rhode Island Constitutions were infringed on, and they argued that the policy was void for a variety of reasons, including the fact that the DOC had not followed the notice and comment procedures of the APA as it had done when policy 28.24 originally was enacted.

Each of the plaintiffs filed a motion to proceed pseudonymously in an effort to prevent further public disclosure of their names because they feared unusual scrutiny and adverse consequences owing to their status as sex offenders.[4] A justice of the Superior Court heard the motions in January 2002 and denied them. He gave the plaintiffs fourteen days to give notice of their intent to proceed using their true names or have their claims dismissed with prejudice. Pelland was the only plaintiff to give such notice.

Following our decision in *Doe v. Burkland*, 808 A.2d 1090 (R.I.2002), plaintiffs filed a motion in the Superior Court to reconsider the previous decision denying the plaintiffs the right to proceed using pseudonyms.[5] The same hearing justice presided over the motion to reconsider, and he ruled that only Pelland was properly before the court because the claims of the other plaintiffs had been dismissed with prejudice. Counsel for plaintiffs argued that no final judgment had been entered and, therefore, the hearing justice's decision not to address the merits of the other two plaintiffs' arguments was improper. The hearing justice then engaged in a discussion with both counsel that ended with a determination that each side would brief the issue as to whether judgment should be entered at that time, or *nunc pro tunc.* However, it appears from

---

**3.** The original eight-count complaint, brought in the Superior Court, alleged, in counts 1 and 2, violations of the Administrative Procedures Act, G.L.1956 chapter 35 of title 42, and the state constitution's separation of powers provisions. The remaining counts alleged violations of various rights under the constitutions of both the United States and Rhode Island. The state removed the entire case to the United States District Court for the District of Rhode Island pursuant to 28 U.S.C. § 1441. That court then remanded counts 1 and 2 back to the Superior Court. The constitutional violations in counts 3 through 8

were rejected in a well-reasoned decision of the federal district court. *See Pelland v. Rhode Island,* 317 F.Supp.2d 86, 90–97 (D.R.I.2004).

**4.** It appears from the record that all the plaintiffs were required to be a part of the sex offender registry, and register with law enforcement in the town in which they reside.

**5.** One of the original plaintiffs was not included in the motion to reconsider because his probation had ended.

the record that no judgment was entered in this case at any time until the final disposition.

Pelland soldiered on alone, and the parties eventually filed cross-motions for summary judgment on the substantive claim to be determined on a stipulated statement of undisputed facts. A second hearing justice,[6] after expressing concerns about mootness and ripeness, granted summary judgment for defendants in January 2005. He ruled that the November 2000 memorandum from the DOC was not a rule subject to the notice and comment procedures of the APA, but rather an "internal guideline" to help probation officers determine when to grant out-of-state travel permits to sex offenders.

Significantly, Pelland's probationary period ended three days after the summary judgment was entered. Nonetheless, Pelland filed a timely appeal seeking review of the grant of summary judgment in favor of the state. The other plaintiffs also appealed the denial of their motion to proceed pseudonymously.

## II

### Motion to Proceed Pseudonymously

The state disputes whether the appeals of the plaintiffs other than Pelland regarding this issue are properly before us because no final judgment was entered dismissing those plaintiffs from the case. Nevertheless, we will address the merits of their arguments.

■ Even though there is no direct authority in this state with respect to the proper standard of review of a hearing justice's decision denying a plaintiff the right to proceed using a pseudonym, we believe there is persuasive authority in

decisions of federal courts holding that such a decision is within the sound discretion of the hearing justice that will be disturbed only if the hearing justice has abused his discretion. *See Lindsey v. Dayton–Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir.1979) ("We believe that the proper standard of review [of a decision on whether to allow a party to use a pseudonym] upon appeal is whether the trial court abused its discretion * * *.").

The plaintiffs press the argument that the balance of interests militates in favor of allowing them to use pseudonyms because they have moved on with their lives, and revealing their identities as sex offenders at this time could have a deleterious effect on the families they have established and the employment they have secured. Further, they express concerns about reprisals in their jobs and harassment in their communities. Correctly, they point out that *Burkland* articulates a test to be employed when a court considers whether a litigant should be permitted to proceed using a pseudonym.

■ In *Burkland,* 808 A.2d at 1092 n. 1, the plaintiff originally filed a suit using his legal name, only to later ask to use a pseudonym and to have his name redacted from previous court filings. The defendant appealed to this Court after the trial justice allowed the plaintiff to use a pseudonym and ordered the plaintiff's true name redacted from the documents in the record. *Id.* When we decided *Burkland,* we relied on persuasive authority from the federal courts as well as a scholarly article, and we determined that the proper mechanism to decide such a motion was to "employ a balancing test that weighs the rights and interests of each litigating party and the interests of the public." *Id.* at

---

**6.** A different hearing justice presided over the cross-motions for summary judgment than the justice who heard the motions to proceed pseudonymously.

1097 (quoting Joan Steinman, *Public Trial, Pseudonymous Parties: When Should Litigants be Permitted to Keep Their Identities Confidential?*, 37 Hastings L.J. 1, 36 (1985)). We also set forth the factors that should be considered in that balancing test, including: (1) the extent to which the identity has been kept confidential; (2) the reasons the litigant fears public disclosure; (3) the public interest in concealing the litigant's identity; (4) circumstances that create an atypically weak interest in public disclosure; and (5) the legitimacy of the motives both of the litigant seeking pseudonymity and the party seeking to force disclosure. *Id.* at 1096–97 n. 6.

■ Because the plaintiff in *Burkland* had voluntarily spread his true name all over the public record for nine months while his lawsuit was pending and before he sought the right to proceed using a pseudonym, we held that he had negated any interest he may have had in concealing his identity, and, therefore, it was error for the trial justice to grant his motion. *Id.* at 1097. Insofar as the current appeal relates to Pelland, the circumstances are nearly identical. After the hearing justice denied his motion to proceed pseudonymously and ordered that Pelland's claim be dismissed unless he proceeded using his real name, Pelland voluntarily chose to go forward rather than seek review of the hearing justice's ruling. As the hearing justice pointed out, Pelland's name was open on the public record for nearly a year before he sought any review of the decision to deny him the use of a pseudonym.

*Cf. Burkland*, 808 A.2d at 1095 ("plaintiff should not have been allowed to unring the bell that he had been tolling for approximately nine months after he began this lawsuit in his own name"). Therefore, we hold that the hearing justice did not abuse his discretion when he denied Pelland's motion to reconsider the question of whether he could proceed using a pseudonym.

■ The appeals of the remaining two plaintiffs, however, hinge on the propriety of the hearing justice's decision in the first instance, when he denied the motion to proceed under a pseudonym and ordered that the complaints be dismissed unless the plaintiffs filed affidavits signifying their willingness to go forward using their real names. During the hearing justice's explication of this decision, rendered nearly eleven months before *Burkland* was issued, he cited some of the very same cases as well as the very same law review article that we cited in *Burkland* when we articulated the standard. *See Burkland*, 808 A.2d at 1096. Further, he explained the value of public disclosure in this case, the relative ineffectiveness of concealing the plaintiffs' true identities because of the various laws concerning the identification of sex offenders, and generally weighed the privacy interest of the plaintiffs against the public interest in disclosure. Thus, even without the benefit of the *Burkland* opinion, the hearing justice in this case undertook the very balancing test for which that case later called,[7] and he

---

7. During his decision, the hearing justice undertook a pointed analysis of the relevant factors:

"[T]here is a strong public interest in having all people who seek recourse in the courts to have their names disclosed. * * * [A] showing of simply some economic hardship or some embarrassment is not enough. * * * [F]or the sex offender in Rhode Is-

land * * * [his] identity will first be known to any member of the public or the press who is interested in learning it [because of the registration requirement]. * * * [O]nly extreme circumstances bordering on the threat of physical harm and violence [warrant permission] to proceed pseudonymously. [T]here is also a clear public policy in this state in favor of a special concern of

came to the conclusion that plaintiffs should not be allowed to proceed using pseudonyms. Our review of the record leads us to conclude that this decision was not an abuse of discretion, and therefore we hold that the motion was properly denied.

## III

### Out–of–State Travel Restrictions on Probationers

■ Three days after the trial justice granted summary judgment for defendants, Pelland's probationary period expired, and he no longer was subject to the out-of-state travel policy that he challenges. Indeed, the hearing justice expressed concern that the case before him might be moot, but chose to decide the case on the merits out of "an abundance of caution."

■ A case is considered moot if there was a justiciable controversy present when it began, but a change in circumstances leaves the litigant without a stake in the outcome. *Cicilline v. Almond,* 809 A.2d 1101, 1105 (R.I.2002). Because judicial power is at its weakest in the absence of a justiciable controversy, we will review moot cases only when the subject matter is of " 'extreme public importance' " and the circumstances that gave rise to the initial controversy are capable of repetition while evading review. *Sullivan v. Chafee,* 703 A.2d 748, 752 (R.I.1997).

There is no question that this appeal is moot because Pelland, no longer serving probation, is completely unaffected by the travel restrictions at issue.[8] The only question that remains for our consideration, then, is whether this is a matter of extreme public importance that is capable of repetition while evading review. *See Sullivan,* 703 A.2d at 752. Moot matters that we have found worthy of consideration have usually involved constitutional rights,[9] voting rights, or matters concerning a person's livelihood. *Foster–Glocester Regional School Committee v. Board of Review,* 854 A.2d 1008, 1013 (R.I.2004).

While we can see that the question of the circumstances under which sex offenders on probation may travel out of state is one of at least some public importance, and that it is a certainty that more sex offenders will be placed on probation and subject to the out-of-state travel restrictions challenged here, we cannot and do not conclude that this is an issue that will evade review. The length of probation imposed by the courts of this state ranges greatly— from a period of months to multiple decades. Thus, there exists no likelihood that the legal issues raised here will evade review. Therefore, we hold that Pelland's claim is moot, and not properly before this Court.

## IV

### Conclusion

For the reasons stated in this opinion the decision of the Superior Court to deny the plaintiffs' motions to proceed pseudon-

identification of persons convicted of serious sex crimes * * *. So, for these reasons I do not believe that the plaintiffs have made any showing that they are entitled to proceed pseudonymously in this litigation."

8. We observe that counsel for plaintiffs recognized that such a circumstance rendered the case moot when he did not include one of the original plaintiffs in his motion for reconsid-

eration of the hearing justice's decision on the question of using pseudonyms because "as his probation has ended, his * * * request for relief is now moot."

9. It is worth noting that at the time the decision was rendered in the United States District Court, Pelland was still on probation.

ymously is affirmed, and Joseph Pelland's appeal from the judgment upholding the validity of the DOC's out-of-state travel restrictions for sex offenders is dismissed on the grounds that it is moot.