DECISION
Derrick R. Oliver (Defendant) moves this Court to reconsider its prior decision denying his motion to dismiss two of three cases pending against him, asking that the Court vacate its previous decision and grant his Motion to Dismiss. Mr. Oliver filed the original Motion to Dismiss on April 26, 2007, which was denied by this Court after a hearing on May 15, 2007.[1] On November 6, 2007, the Defendant filed the present Motion to Reconsider his Motion to Dismiss, arguing that the Court had erroneously applied certain articles of the Interstate Agreement on Detainers Act (IADA), through which Rhode Island received custody of the Defendant, and which provides strict timeframes in which a defendant must be brought to trial. For the reasons set forth in this Decision, the Court denies the Defendant's requested relief.
 I Facts and Travel
On July 11, 2005, warrants were issued for the Defendant's arrest in the two cases now pending against him. He had not yet been arraigned on these charges, and in the fall of 2005, he *Page 2 
was tried on unrelated charges in Massachusetts. On January 13, 2006, the Rhode Island Attorney General's Office sent a letter to the Bristol County House of Corrections, explaining that the Defendant had outstanding warrants in Rhode Island and asking that he be informed of his right to request final disposition of those cases under the Interstate Agreement on Detainers Act. Subsequently, the Defendant was brought to Rhode Island on May 15, 2006, pursuant to the IADA.
The Interstate Agreement on Detainers Act, G.L. 1956 § 13-13-1 etseq., provides two ways in which a state may gain custody over a person facing charges therein but incarcerated elsewhere. First, the prisoner may seek to be brought to the state where charges are pending, in which case he or she must be brought to trial on any untried indictments, informations, or complaints within one hundred eighty (180) days from the date the state receives the prisoner's request for final disposition of the indictments. G.L. 1956 § 13-13-2 Art. III(a). Second, the state in which charges are pending can send a written request to the custodial state, seeking physical custody of the prisoner. Id. at Art. IV(b). In this instance, the state must try all untried indictments, informations and complaints within one hundred twenty (120) days of the prisoner's arrival in the state. Id. at Art. IV(c). In both circumstances, trial can occur after the specified time frame if the Court grants any necessary and reasonable continuances "for good cause shown in open court" while the party, or his or her counsel, is present. Id. at Art. III(a); Art. IV(c).
After his arraignment on May 5, 2006, the Defendant was assigned an attorney from the Public Defender's Office, and each side participated in numerous pre-trial conferences. The case was continued a number of times between the arraignment in May 2006, and April 2007, when Defendant first filed the original Motion to Dismiss. During this time, the Defendant was represented by successive counsel from the Public Defender's Office, who sought continuances *Page 3 
to allow the Defendant additional time to consider two plea offers from the State. Other continuances, considered more thoroughly later, were due to the unavailability of either the prosecutor or the defense attorney.
On April 26, 2007, the Defendant filed a Motion to Dismiss for failing to comply with the time limitations proscribed by the IADA. The Defendant's Attorney did not request an evidentiary hearing to determine whether the Defendant's presence in Rhode Island was pursuant to Article III or Article IV of the IADA. Instead, the Defendant's Attorney relied on the court filings and docket entries to determine which time period applied and when it began to run. This Court denied the Defendant's motion, after concluding that the delay in bringing the Defendant to trial was for good cause shown, and therefore, any continuances that placed the trial beyond either time frame were pursuant to the IADA.
The Defendant again changed attorneys, engaging the services of private counsel instead of having the Public Defender's Office continue its representation. Present counsel filed the Motion and Memorandum to Dismiss and to Reconsider (Motion to Reconsider) on November 6, 2007. In this Motion to Reconsider, the Defendant contends that the Court should vacate its prior denial of the April 2007 Motion to Dismiss and grant dismissal because the Defendant's cases were not brought to trial within either applicable time frame. Defendant's main argument is that before a continuance can be granted, a trial date must be set within the applicable time frame of one hundred twenty (120) or one hundred eighty (180) days. The Defendant avers that only if a trial date has been set within one of the time frames, may it then properly be continued for good cause shown. Because the first trial date set in this case was set for July 23, 2007, more than one year after the Defendant was brought to Rhode Island, and more than two months after the original Motion to Dismiss was denied, the Defendant asserts that dismissal of the charges is *Page 4 
required.
Moreover, the Defendant contends that if a trial date is going to be set beyond the applicable time frame, the State must explicitly request to do so. Without an explicit request to set the trial date beyond the time period, the Defendant contends that he cannot waive his right to be tried within the time limit. The Defendant also asserts that an evidentiary hearing is necessary to determine whether he requested to be brought to Rhode Island, or whether the State asked for custody of his person. Further, the Defendant contends that an evidentiary hearing is needed to determine when he arrived in Rhode Island and when he was arraigned.
The Defendant also argues that the continuances granted in this case do not excuse the State's obligation to bring him to trial within the appropriate time frame. Finally, the Defendant contends that he was in Massachusetts custody for seventy-one days after his sentencing before he was given the opportunity to request a transfer to Rhode Island under the IADA. He asserts that these seventy-one days should count against the State when determining the deadline by which he must have been brought to trial.
In response, the State asserts that it is not necessary to set a trial date within the applicable time frame before a continuance might be granted. Rather, the State contends that a continuance, if granted for good cause shown, may extend the time frame, regardless of whether the first trial date is set within the applicable time period. The State also asserts that the majority of the continuances granted before April, 2007, were at the Defendant's request and should not be charged to the State.
Because there is no rule or statute authorizing the Court to entertain and decide a motion to reconsider, the Court asked the parties to brief this issue. Both parties filed supplemental memoranda. The Defendant cites the Superior Court Rules of Civil Procedure, Rule 60(b), and *Page 5 
the civil case of Murphy v. Bocchio, 114 R.I. 679, 682, 338 A.2d 519,522 (1975), to support the proposition that a Court has the inherent authority to reconsider and modify its own interlocutory rulings prior to the entry of a final judgment. The State asserts that this Court may not reconsider its own interlocutory criminal decisions, because there is no rule or statute providing the Court with such authority.
The Defendant concedes that all time lapsing after July 23, 2007, the date first set for trial, is excludable and cannot be charged to either party. Def. Mot. To Recon. 21. Therefore, the focus of these motions is on the time period from when the Defendant was brought to Rhode Island until July 23, 2007. However, because this issue is time sensitive, the Court briefly explains the time frame in which it has made the present determination. After receiving the Defendant's Motion to Reconsider on November 6, 2007, the Court received the State's objection on December 5, 2007. The Court subsequently requested that each party brief the issue of whether the Court has the authority to hear a motion to reconsider. The Court received the Defendant's memorandum on January 2, 2008. On January 14, 2008, the Court received the State's supplemental objection to the Defendant's Motion to Dismiss. The Court thereafter heard oral arguments on the motions on February 20, 2008. Recognizing that swift resolution of this matter is crucial, the Court has worked as quickly as possible to conclude this issue in a timely manner. *Page 6 
 II Standard of Review
The Rhode Island Rules of Criminal Procedure grant the Superior Court the authority to review sentences in criminal cases under Rule 35.[2]
Super. R. Crim. P. R.35. Specifically, the Rules of Criminal Procedure do not contain a rule allowing a court to reconsider and alter its own interlocutory decisions.
This Court looks to the Rhode Island Rules of Civil Procedure and case law pertaining thereto for some guidance in determining the scope of its authority to reconsider its own interlocutory criminal decisions. The Rhode Island Supreme Court has noted that "[a] close examination of the first portion of [R.I. Rules of Civil Procedure Rule 60(b)] discloses that it is applicable only in instances where relief is sought from a final judgment, order, or proceeding." Murphy v. Bocchio, 114 R.I. 679,682, 338 A.2d 519, 522 (1975). The Court explained the significance of the "final judgment" limitation by articulating that, implicitly, "a trial justice still retains the inherent power to modify an interlocutory judgment or order prior to final judgment." Id. (citing 11 Wright Miller, Federal Practice and Procedure § 2852 at 145 (1973), 7 Moore, Federal Practice para. 60.20 at 242 (2d ed. 1974)).
While failing to address the Court's authority to entertain a motion to reconsider under the criminal or civil procedure rules, some Rhode Island Supreme Court decisions have discussed motions to reconsider interlocutory appeals in the context of criminal matters, either in affirming the lower court's ruling on the motion or when explaining the facts and procedural history of the cases. See Pelland v. State,919 A.2d 373, 377 (R.I. 2007) (explaining that plaintiff's motion to reconsider the court's denial of his motion to proceed pseudonymously was *Page 7 
properly denied); State ex rel. Town of Middletown v. Snyder,692 A.2d 705, 705 (R.I. 1997) (trial court denied town's motion to reconsider the suppression of defendant's breathalyzer results; issue was not appealed); Evans v. Wall, 910 A.2d 801 (R.I. 2006) (trial court denied Evans' motion to reconsider denial of his motion for post conviction relief; issue was not appealed). Although these cases certainly do not pronounce a rule permitting motions to reconsider interlocutory orders in civil or criminal contexts, one can infer from the Rhode Island Supreme Court's silence regarding a Court's authority to consider these motions that they were properly entertained.
Numerous other jurisdictions grant trial courts the authority to reconsider interlocutory criminal decisions. See, e.g., Montalvo v.Texas, 846 S.W.2d 133 (Tex. 3rd D. 1993) (explaining the difference between an interlocutory appeal and a motion to reconsider and the importance of a court's power to reconsider its own determinations so as to prevent errors that may not be immediately appealed).[3] That Rhode Island does not permit a Defendant to file any interlocutory appeals weighs more heavily in favor of permitting a motion to reconsider. If the Court is not permitted to reconsider its own interlocutory rulings, a case may proceed to trial, only to later be overturned on a pre-trial procedural error.
Moreover, this Court notes that there are substantial public policy considerations weighing in favor of permitting a court to reconsider its own interlocutory rulings. For instance, many courts recognize the importance of permitting a court to correct an erroneous application of law prior to the entry of a final determination in a case.See, e.g., Illinois v. Bryant, 860 N.E.2d 511, 517 (Ill.App. 2006) (explaining that "[t]he purpose of a motion to reconsider is to bring to the trial court's attention changes in the law, errors in the court's previous application of existing *Page 8 
law, and newly discovered evidence not available at the time of the hearing"). Further, it is important that a court be permitted to consider newly discovered evidence affecting the prior decision to insure accuracy and expediency. See, e.g., id.
Therefore, although there is no direct authority guiding this Court's determination, it is clear that a criminal trial court in Rhode Island has the authority to hear a motion to reconsider. However, such authority is discretionary and should be exercised with caution and in limited circumstances, such as where there has been an erroneous application of the law, or where evidence not previously available has been discovered.
In determining whether to dismiss any untried indictments, informations, or complaints due to untimely prosecution under the IADA, the Court must consider the continuances. Specifically, the Court must determine whether they were reasonable and necessary, and were granted for good cause shown in open court, while the Defendant, or his attorneys, were present. Id. at art. III(a); art. IV(c).
 III Analysis
In support of the Motion to Reconsider, the Defendant argues that the IADA was erroneously applied to his situation and that an evidentiary hearing is necessary. In such a hearing, the Defendant contends that the Court must determine the manner in which the Defendant came to be in Rhode Island's custody, thereafter which time frame applies under the IADA, and when the applicable time frame began to run.
Defendant's previous attorney from the Rhode Island Public Defender's Office filed the original Motion to Dismiss on April 26, 2007. At oral arguments on that motion, he represented to the Court that he did not feel an evidentiary hearing was necessary. Instead, he opted to rely *Page 9 
on the Court documents and docket sheets in determining the travel of the case. His decision to proceed without an evidentiary hearing was a tactical decision and cannot be revisited. Private Counsel, who now represents the Defendant, does not contend that there is new evidence not previously available that would require an evidentiary hearing. This Court will not reconsider the Motion to Dismiss simply because the Defendant's new counsel would have taken a different approach.
Moreover, the Defendant's private counsel does not assert that he has received new evidence that might affect this Court's decision denying the Motion to Dismiss. Instead, the Defendant contends that the IADA was erroneously applied and that the Motion to Dismiss should have been granted with respect to all three cases. The State asserts that this Court correctly applied the IADA in denying the Defendant's Motion to Dismiss with respect to the two remaining cases.
Specifically, the Defendant asserts as its main argument that the IADA requires dismissal of a case if a trial date was never set within the applicable time frame. According to the Defendant, only if a trial date was set before the expiration of the time limit, may it then be continued for good cause shown. Because the first trial date was set for July 23, 2007, well beyond either the one hundred twenty (120) or one hundred eighty (180) day time periods, the Defendant contends that none of the continuances granted obviates the State's need to try him in a timely manner. Moreover, the Defendant contends that he cannot waive his right to be tried within the applicable time frame without an explicit request by the State to set a trial date beyond the expiration of time.
The State contends that a trial date need not be set before the expiration of the time period, so long as it seeks a continuance of the case beyond the deadline for good cause shown. *Page 10 
The State also contends that the Defendant failed to move to dismiss the cases until April 2007, well after the expiration of either time limit. Finally, the State asserts that nearly all of the continuances granted were at the Defendant's request and the State's position should not be adversely affected as a result.
This Court begins by considering first which time frame applies in this case. It is unclear whether the one hundred twenty (120) or one hundred eighty (180) day time period applies, as neither party has explained how Rhode Island came to have custody over the Defendant. The Defendant arrived in Rhode Island on May 5, 2006. If the State sought to bring the Defendant here, the one hundred twenty (120) day time period began to run on May 5, 2006, and the one-hundred twentieth day was September 2, 2006.
It is difficult for this Court to calculate when the one hundred eighty (180) day deadline would have expired because none of the three case files contains a request from the Defendant seeking disposition of the pending charges. There is, however, an inter-office memorandum in case file P2-2005-3787, from Michele Joubert of the Extradition Unit of the Department of the Attorney General, to Phyllis Lynch, in the Criminal Clerk's Office. This memorandum was filed with the Court on April 26, 2006, and includes a letter from the Attorney General's Office to the Bristol County House of Corrections, Records Department, dated April 24, 2006. Two forms are attached to the letter: the first is titled "evidence of agent's authority to act for receiving state," and the second is titled "Prosecutor's acceptance of temporary custody offered with an inmate's request for disposition of a detainer."
This second attachment is signed by Matthew S. Dawson, a Rhode Island Assistant Attorney General, and reads in pertinent part "[i]n response to your letter received April 17, 2006 and offer of temporary custody regarding Derrick Oliver . . . I accept temporary custody and I *Page 11 
propose to bring this person to trial . . . within the time specified in Article III(a) of the Interstate Agreement of Detainers (IAD)." Though the letter is addressed to Major Larry Sherman of the Bristol County House of Corrections, it seems to indicate that custody was offered to Rhode Island at the request of the Defendant. If this is accurate, the one hundred eighty (180) days began to run on April 17, 2006, and the deadline was Sunday, November 5, 2006.
The Defendant first objected to the untimeliness of his trial on April 26, 2007. Therefore, it is unnecessary to determine whether the deadline arrived at one hundred twenty (120) days or one hundred eighty (180) days, as the Defendant was not brought to trial within either time period. Therefore, this Court will decide the Defendant's Motion to Reconsider the Motion to Dismiss, having determined it is unnecessary, based on the facts of this case, to first conclude which time period applies.
This Court next considers the Defendant's contention that a trial date must be set before continuances may be granted. This Court is not persuaded by this argument because it would undermine the way Rhode Island criminal cases are set for trial, and because the number of continuances in this case would have prevented scheduling it for trial prior to the expiration of the deadline.
The Rhode Island Rules of Criminal Procedure do not provide a method by which a criminal case is assigned to the trial calendar.C.f. Super. R. Civ. P. Rule 40(a) (providing three ways in which a civil case may be assigned to a trial calendar: by court order, by the parties' written agreement, or by one party's motion). Instead, the parties conference criminal cases until each party is ready to either dispose of the case by way of a plea agreement, or proceed to trial. Thereupon, the attorneys set a mutually agreed upon trial date in accordance with the Court's schedule. *Page 12 
Because trial dates are set upon the agreement of the parties, it would not make sense to require the Court to set a date for trial within the time frame if the date will automatically be altered because one or both of the parties are not ready to proceed to trial. In this case, numerous continuances were requested and granted, making it impossible to schedule a trial date within the time frame.
This Court notes that the Defendant's listing of continuances in its Motion to Reconsider mirrors the listing offered by the State in its objection to Defendant's original Motion to Dismiss. These timelines serve as an accurate summary of the continuances granted in this case. This recitation indicates that after the Defendant's arraignment, the case was continued nineteen times before the Defendant moved to dismiss the charges for untimely prosecution. Of these nineteen continuances, thirteen were attributed to Defendant, and six were attributed to the State.
It is also important to note that four of the Defendant's requested continuances were to consider offers by the prosecution to dispose of the cases by way of a plea agreement. Moreover, before the latest possible deadline for bringing the Defendant to trial passed on November 5, 2006, eleven continuances were requested and granted, six of which were at the request of the Defendant. The Defendant did not object to the last continuance within the one hundred eighty (180) day deadline, which set the next date as November 8, 2006. The Court is unmoved by Defendant's assertion that even the continuances granted at Defendant's request should be charged to the State. The Defendant cannot be permitted to request numerous continuances and then move for dismissal when the trial does not occur within the proscribed time period. Permitting him to do so would undermine the judicial system, and would allow a defendant to avoid prosecution through his own delay. The Rhode Island Supreme Court has *Page 13 
stated that "the [IADA] was not designed to protect against delays caused by actions of a defendant." State v. Shatney, 572 A.2d 872, 875
(R.I. 1990).
Moreover, given the timing of the continuances and their frequency in this case, it would have been impossible to set a date for trial within the deadline. In fact, Defendant's own conduct made it impossible to schedule and try the case within the deadline. The difficulty in scheduling this case for trial is clear. Further, after denying the original Motion to Dismiss in May 2007, the Court asked the parties to set a trial date immediately, but Defendant's counsel was unavailable.
The Defendant does not present new evidence that would impact whether these continuances were necessary or reasonable for good cause shown. Further, the new arguments asserted by counsel do not persuade this Court that a misapplication of the law has occurred. Therefore, this Court has decided to exercise its discretion in not entertaining the Defendant's Motion to Reconsider the Motion to Dismiss.
 IV Conclusion
The Defendant has failed to persuade this Court that it erred in previously denying Defendant's Motion to Dismiss. The Defendant has not articulated an erroneous application of law that this Court must modify, nor has it presented new evidence not available at the time of the original motion that would now compel this Court to reopen the matter. For these reasons, this Court declines to exercise its discretion to reconsider its prior denial of the Motion to Dismiss. These matters are assigned to the May 5, 2008 trial calendar. If necessary, either party may request a continuance at the call of said calendar. Counsel shall submit an appropriate order for entry.
[1] A third matter, case number P2-2005-3787, was pending against the Defendant and was included in the original motion to dismiss. However, the Court granted the Defendant's Motion to Dismiss that case on May 31, 2007, after determining that the Defendant had not been arraigned in that matter. The other two cases are still pending and are subject to this Decision.
[2] Rule 35 permits the court to modify a sentence upon receipt of a motion filed pursuant thereto, by correcting, increasing, or decreasing the sentence. Super. R. Crim. P. R.35.
[3] Montalvo v. Texas also provides an exhaustive list of other jurisdictions that permit a criminal trial court to hear motions to reconsider.