**In re Michael DERDERIAN.**

No. 2007–41–Appeal.

Supreme Court of Rhode Island.

June 12, 2009.

614

Kristin E. Rodgers, Esq., Providence, for Plaintiff.

Rebecca T. Partington, Department of Attorney General, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The petitioner, The Providence Journal Company (the Journal), appeals from a Superior Court judgment denying press access to completed juror questionnaires in a criminal case arising from The Station nightclub fire. The trial court released a copy of a blank juror questionnaire but denied the petitioner access to the completed forms. The Journal argues that it has a constitutional right of access to the jury selection process, including a right of access to juror questionnaires, and that blanket denial of access to the completed questionnaires violated its First Amend-

ment rights. In opposition, the state argues that this Court should dismiss this appeal as moot because the defendant pleaded nolo contendere before the jury was empaneled; it argues in the alternative that the trial justice correctly determined that the press and public do not have a right of access to the completed preliminary questionnaires. Because we deem this case to be moot, the appeal is denied and dismissed.

### Facts and Procedural History

This case arises out of the tragic fire on February 20, 2003 at The Station nightclub, in which 100 people lost their lives. As part owner of The Station nightclub, Michael Derderian was charged with 100 counts of involuntary manslaughter under a theory of criminal negligence and 100 counts of involuntary manslaughter under a theory of misdemeanor manslaughter. It was readily apparent to the court, the state and defense counsel that, due to the enormity of the fire's impact within the state, the overwhelming media exposure, and the highly charged nature of this criminal proceeding, selecting an impartial jury likely would be problematic. With input from trial counsel, the court developed a thirty-two-page juror questionnaire to assist in jury selection. The express purposes of the juror questionnaire were (1) to expedite the voir dire process by eliminating repetitious questioning in a case expected to last several months and (2) to elicit candid and complete answers so the parties could select an impartial jury in an environment where most potential jurors already would be aware of, and possibly affected by, the underlying case. Access to these questionnaires is at issue in this case.

Prospective jurors were to report to the courthouse and complete the questionnaires in several groups. On the day summoned, each prospective juror was pre-

sented with the 32–page questionnaire with oral instructions from the trial court to complete the questionnaire "fully and frankly to the best of each person's ability." The face of the questionnaire form included the following instructions:

> "You should be aware that your answers to these questions are *NOT* CONFIDENTIAL and may be included in the public record or discussed in open court. If in response to *ANY* of the questions, you do not wish to answer because the issue is too sensitive, personal, or private, please write the word 'PRIVATE' in the space after the question and **circle the entire question.** The Court then may ask you privately about the question if you are called to return."

Notwithstanding those instructions, the trial justice further orally advised potential jurors that every reasonable effort would be made by the court· to keep their answers private. By September 6, 2006, 421 prospective jurors had completed the questionnaires. · Of those, counsel for the state and the defense reviewed approximately 200 questionnaires, and one or both parties identified a number of prospective jurors they hoped the court would excuse for cause.

On September 11, 2006, the Journal filed a miscellaneous petition seeking a declaration that the Journal was entitled to have access to the blank questionnaire form as well as the information contained in the completed questionnaires. The Journal maintained, in its pleading, that restricting the Journal and the public's right of access to the voir dire proceedings, without making specific findings justifying such restriction, would. violate the Journal's rights under the United States Constitution, the Rhode Island Constitution, and the common law. The state objected to the disclosure of both the blank and the. completed questionnaires.

Before the entire jury pool had completed the questionnaires, Mr. Derderian entered a plea of nolo contendere, which the court accepted on September 29, 2006. The court sentenced Mr. Derderian that same day. Accordingly, jury selection was never completed and no prospective juror was ever dismissed. Notwithstanding the change of plea, the Journal continued to seek access to the information contained in the questionnaires. The state withdrew its objection to the disclosure of the blank questionnaire form, and the trial court conducted a hearing on access to the completed questionnaires on October 10, 2006.

By written decision dated October 12, 2006, the trial court permitted the release of the blank questionnaire form, but denied access to the completed questionnaires or any portion thereof. In his decision, the trial justice first considered whether the Journal's petition was moot because of Mr. Derderian's nolo contendere plea and subsequent sentencing. He determined that the case was justiciable because "access to juror questionnaires used in future criminal trials is an ongoing issue of great public interest," capable of repetition and evading review. Next, the trial justice decided that, although petitioner had a presumptive right to access jury questionnaires used in criminal trials under the First Amendment to the United States Constitution, that presumption was not absolute and was rebutted by the specific facts of the case. In reaching this determination, the court balanced the constitutional interests of the public's right of access to criminal proceedings against future defendants' right to a fair trial, as well as the statutorily created right to privacy in Rhode Island. See U.S. Const. Amend. I & VI; G.L.1956 § 9-1-28.1(a)(3). The trial justice set out his specific findings in order to conform to the four-part inquiry, delineated in *State v. Cianci*, 496 A.2d 139 (R.I.1985), for determining whether a limitation on the public's and press's right of access to criminal trials is lawful.[1]

A judgment was entered on October 31, 2006, granting access to a copy of the blank juror questionnaire and denying the petition "in all other respects." The Journal filed a timely notice of appeal on November 3, 2006. On appeal, the Journal argues that it has a First Amendment right of access to the jury selection process in criminal trials, including completed juror questionnaires, and that this right is not outweighed by either the Sixth Amendment right to a fair trial of future defendants nor the privacy interests of prospective jurors—irrespective of whether the jury selection process was terminated by entry of a plea. The Journal maintains, alternatively, that, even if there were compelling governmental interests sufficient to override First Amendment concerns, the trial court's blanket denial of all completed questionnaires was overly broad and impermissible under the four-part inquiry elucidated in *Cianci*. See note 1, *supra*. The state, on the other hand, argues that this issue is moot because the extraordinary facts of this case make it "like no other" and thus unlikely to be repeated. Furthermore, the state contends

---

1. In *State v. Cianci*, 496 A.2d 139 (R.I.1985), this Court derived from United States Supreme Court public-access-to-criminal-trial precedent a four-part inquiry for determining whether a closure order is justified. Under this test, "[a] protective order (1) must be narrowly tailored to serve the interests sought to be protected, (2) must be the only reasonable alternative, (3) must permit access to those parts of the record not deemed sensitive, and (4) must be accompanied by the trial justice's specific findings explaining the necessity for the order." *Id.* at 144; *see Providence Journal Co. v. Rodgers*, 711 A.2d 1131, 1136 (R.I.1998).

that the Journal's First Amendment right of access is not absolute, and, in this case, it is outweighed by future defendants' Sixth Amendment right to a fair trial and the prospective jurors' statutory privacy interests. The state also argues that the Superior Court decision complied with the four-part *Cianci* test in determining that limiting the public's access to the juror questionnaires was constitutionally permissible.

## Discussion

■ We first address the issue of mootness. We repeatedly have stated that this Court will "only consider cases involving issues in dispute; we shall not address moot, abstract, academic, or hypothetical situations." *State v. Medical Malpractice Joint Underwriting Association,* 941 A.2d 219, 220 (R.I.2008) (quoting *Morris v. D'Amario,* 416 A.2d 137, 139 (R.I.1980)). "This Court has consistently held that a case is moot if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant of a continuing stake in the controversy." *Id.* (quoting *Cicilline v. Almond,* 809 A.2d 1101, 1105 (R.I.2002)). We generally decline to address moot cases because "without the presence of a justiciable case or controversy, * * * judicial power * * * is at its weakest ebb." *Cicilline,* 809 A.2d at 1106 (quoting *Sullivan v. Chafee,* 703 A.2d 748, 752 (R.I.1997)). In this matter, as explained above, Mr. Derderian's criminal case ended when he entered a plea of nolo contendere and the court sentenced him accordingly, obviating the necessity of empaneling a jury. The arguments of the press to unseal documents technically are moot because, the criminal

case having concluded, the claims are unrelated to an actual controversy.

■ Nonetheless, "a determination of mootness may not end our judicial review." *In re Court Order Dated October 22.2003,* 886 A.2d 342, 348 (R.I.2005) (quoting *Foster–Glocester Regional School Committee v. Board of Review,* 854 A.2d 1008, 1013 (R.I.2004)). As a limited exception to the mootness doctrine, we will review an otherwise moot case when the issues raised implicate matters of "extreme public importance" and the circumstances that gave rise to the initial controversy are capable of repetition while evading review.[2] *Pelland v. State,* 919 A.2d 373, 378 (R.I.2007) (citing *Sullivan,* 703 A.2d at 752). In these types of matters, "resolution of the question is in the public interest, as for guidance in future cases * * *." *Cianci,* 496 A.2d at 142.

There is no denying that this case raises concerns of great public importance. To say that the facts and events underlying this case are of considerable magnitude in the State of Rhode Island is an understatement. The Station nightclub fire has left an indelible mark on every citizen in this state. It has forced us collectively to reflect on matters of personal accountability, societal responsibility, the role of the state in protecting its citizens, and the function of the criminal justice system. The competing First Amendment and Sixth Amendment principles at issue in the instant matter have been widely held by this Court as being of extreme public importance. *See In re Court Order Dated October 22, 2003,* 886 A.2d at 348–49; *Providence Journal Co. v. Superior Court,* 593 A.2d 446, 448 (R.I.1991); *Cianci,* 496 A.2d at 142; *Edward A. Sherman Publishing Co. v. Goldberg,* 443 A.2d 1252, 1256 n. 6

**2.** "Moot matters that we have found worthy of consideration have usually involved constitutional rights, voting rights, or matters concerning a person's livelihood." *Pelland v.* *State,* 919 A.2d 373, 378 (R.I.2007) (citing *Foster–Glocester Regional School Committee v. Board of Review,* 854 A.2d 1008, 1013 (R.I. 2004)).

(R.I.1982). Not only does this case concern the public's First Amendment right of access to jury selection in criminal proceedings and future defendants' Sixth Amendment right to a fair trial, it also involves the privacy interests of all people who have been or who will be called to serve on a jury and the judiciary's interest in the fair and efficient administration of justice. *See Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 505, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) ("The process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system.").[3]

▪ Nonetheless, we conclude that the circumstances that gave rise to the controversy in this case are not capable of repetition while evading review, rendering this case unreviewable. We agree with the state that this case is unlike any other in Rhode Island history. The facts in this case are extraordinarily unique. There is at most a remote likelihood of another tragic event involving so many lives, receiving such significant attention, affecting so many people, and resulting in a criminal trial in the interests of retribution, deterrence, and community catharsis. The enormous size of the prospective jury pool and number of completed questionnaires is unprecedented in itself. There being 421 completed questionnaires at 32–pages each, the Journal is seeking 13,472 pages of questions and answers. The sheer volume of this information is extraordinary.[4]

Furthermore, the procedural posture of this case is unusual. Fewer than half of the prospective jurors completed questionnaires. Although counsel for both parties identified a number of jurors for excusal, the court did not, in fact, dismiss a single juror. Not one juror was summoned to the courtroom for individual voir dire. A jury never was empaneled. The trial justice never weighed in, at all, on the matter of juror selection. The defendant pleaded nolo contendere before the jury could play any significant role in his criminal trial. Although we could, as the trial justice refused to do, "engage in rank speculation or [ ] satisfy idle curiosity about what jurors, if any, may have been seated in this case or what role, if any, the jury questionnaires may have had in the [d]efendant['s] motive[ ] to change [his] plea," this does nothing to change the fact that the controversy in this case has ended and the extreme factual and procedural posture of this case is unlikely to repeat itself.

### Conclusion

Accordingly, we deny and dismiss the petitioner's appeal. The record of this case shall be remanded to the Superior Court.

Justice FLAHERTY did not participate.

---

3. The value of openness in the jury selection process has been articulated by the First Circuit Court of Appeals:

> "[I]nformation about jurors, obtained from the jurors themselves or otherwise, serves to educate the public regarding the judicial system and can be important to public debate about its strengths, flaws and means to improve it. * * * Juror bias or confusion might be uncovered, and jurors' understanding and response to judicial proceedings could be investigated." *In re Globe*

*Newspaper Co.*, 920 F.2d 88, 94 (1st Cir. 1990).

4. We agree with the trial justice that "under the very unusual facts of this case * * * any request that the [c]ourt redact the sensitive information contained within the filled-in questionnaires and release the remainder is unreasonable" and would be overly burdensome on the court. We do not reach, however, the question of whether this burden rebuts the presumptive right of access to venire proceedings. *See Cianci*, 496 A.2d at 144.